## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Ellis Jerome Swinton, Sr. # 290850, | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No.: 8:15-cv-4148-PMD-JDA |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| J. Al Cannon, Jr., *County of Charleston*; | ) | |
| Charleston County; John Doe I; and John | ) | |
| Doe II, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Plaintiff's objections to United States Magistrate Judge Jacquelyn D. Austin's report and recommendation ("R & R") that the Court dismiss Plaintiff's *pro se* complaint without prejudice and without service of process (ECF Nos. 12 & 10). For the reasons provided below, Plaintiff's objections are sustained in part and overruled in part. The Court dismisses certain of Plaintiff's claims and returns the case to the magistrate for further consideration of the remaining claims.

## BACKGROUND

This case involves Plaintiff's allegedly unlawful extradition from South Carolina to Arizona. The following factual scenario is taken from the complaint and its attachments.

On November 14, 2013, Plaintiff was taken into the custody of the Charleston County Sheriff's Office. The following day, a magistrate issued a warrant authorizing the Sheriff's Office to arrest Plaintiff for being a fugitive from justice. Attached to the warrant was an affidavit from deputy Brian Kellett, in which he averred that Plaintiff had "unlawfully enter[ed] the State of South Carolina, while having outstanding warrants from the State of **Arizona.**" (Compl. Ex., Kellett Aff., ECF No. 1-1.) Kellett further alleged the Sheriff's Office had received

a fax "from the **Maricopa County North Carolina Sheriff's Office**"[1] stating that Plaintiff "had outstanding warrants of arrest . . . in the State of **Arizona**." (*Id.*)

Later on November 15, Kellett gave Plaintiff an extradition waiver form and asked Plaintiff to sign it.[2]  The waiver form stated Plaintiff was waving his rights under any laws "that require any formal extradition for [his] transfer from the State of South Carolina to the State of **Georgia** to answer the charges preferred against [him] in that state." (Compl. Ex., Extradition Waiver, ECF No. 1-1.)  The form further provided that Plaintiff was absolving the Sheriff's Office and Sheriff Al Cannon "from any and all liability for delivering [Plaintiff] to the proper authorities of the State of **Georgia**." (*Id.*)  Plaintiff signed the form.

Plaintiff was never presented with any form waiving his extradition rights for Arizona. He never would  have signed such a form and, instead, would have resisted attempts to extradite him to Arizona.

On December 1, 2013, John Doe I and John Doe II, law enforcement agents from an office not identified in the complaint, came to the jail for the purpose of transporting Plaintiff to Arizona.  At some point, the agents realized that the extradition waiver form Plaintiff signed was not valid for extradition to Arizona.  When they arrived at the jail, they agreed they would present the faulty extradition form to jail personnel and fraudulently represent that the form gave them legal authority to take Plaintiff to Arizona.  Over Plaintiff's objections, Cannon allowed the two agents to take custody of Plaintiff.  Plaintiff was then flown to Arizona, and he now lists his address as a state prison in Tucson.

---

1.    There is no such office, as there is no Maricopa County in North Carolina.  There is, however, a Maricopa County in Arizona.

2.    The complaint does not indicate whether, at that time, Kellett also provided Plaintiff a copy of the arrest warrant and Kellett's affidavit.

## PROCEDURAL HISTORY

This case is the second one Plaintiff has filed this year over his extradition.[3]

First, in May, Plaintiff filed a *pro se* complaint against the Sheriff's Office and Sheriff Cannon.  He sought damages from them, alleging that they violated his federal civil rights and thus were liable to him under 42 U.S.C. § 1983.  The case was referred to Magistrate Judge Austin, who screened the complaint and then filed an R & R recommending that this Court dismiss the complaint without prejudice.  She concluded that Cannon and the Sheriff's Office were immune from suit under the Eleventh Amendment, and in any event, Plaintiff had failed to state a § 1983 claim against Cannon.  Plaintiff did not file any objections to that R & R.  Finding no clear error in the R & R, the Court adopted it and dismissed the complaint without prejudice.

Several weeks later, Plaintiff filed the present action.  He has again sued Cannon, but he substituted Charleston County for the Sheriff's Office, and he has also sued the two unnamed agents who transported him to Arizona.  Plaintiff makes additional allegations regarding his extradition, and he asserts seven causes of action: (1) a due process claim under § 1983; (2) an equal protection claim under § 1983; (3) a due process claim under 42 U.S.C. § 1985; (4) an equal protection claim under § 1985; (5) a declaratory judgment claim under 28 U.S.C. § 2201; (6) a fraud claim under South Carolina law; and (7) a false imprisonment claim under South Carolina law.  Plaintiff seeks damages, costs, and declaratory relief.

As with Plaintiff's first case, the magistrate reviewed the new complaint and issued another R & R recommending that all claims be dismissed without prejudice or service of process.  This time, Plaintiff timely filed objections to the R & R.  Accordingly, this matter is now ripe for review.

---

3.   The first was filed in this Court under case number 8:15-cv-1931-PMD-JDA.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court.  The R & R has no presumptive weight, and the responsibility for making a final determination remains with the Court.  *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  Parties may make written objections to the Magistrate Judge's proposed findings and recommendations within fourteen days after being served with a copy of the R & R.  28 U.S.C. § 636(b)(1).  This Court must conduct a de novo review of any portion of the R & R to which a specific objection is made, and the Court may accept, reject, or modify the Magistrate Judge's findings and recommendations in whole or in part.  *Id.*  Additionally, the Court may receive more evidence or recommit the matter to the Magistrate Judge with instructions.  *Id.*  A party's failure to object is taken as the party's agreement with the Magistrate Judge's conclusions.  *See Thomas v. Arn*, 474 U.S. 140 (1985).  Absent a timely, specific objection—or as to those portions of the R & R to which no specific objection is made—this Court "must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

*Pro se* filings are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and federal district courts must construe such pleadings liberally to allow the development of potentially meritorious claims, *see Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam).  The liberal construction requirement, however, does not mean courts can ignore a clear failure to allege facts that set forth claims cognizable in federal district court.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## ANALYSIS

I.      **Claims Against Cannon**

As in the first lawsuit, the magistrate recommends that the claims against Cannon be dismissed because Cannon is immune from suit under the Eleventh Amendment.  Plaintiff made no objection to that analysis or recommendation the first time.  Now, however, he appears to be arguing that the Eleventh Amendment does not apply to Cannon.  The Eleventh Amendment shields state-level officials, such as South Carolina sheriffs, from monetary liability for harm they committed while acting in their official capacities.  *See Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995); *Carroll v. Greenville Cty. Sheriff's Dep't*, 871 F. Supp. 844, 846 (D.S.C. 1994) ("It is well-established in this state that . . . a suit against the sheriff in his official capacity is a suit against the State.").  In his objections, Plaintiff argues that "[r]easonable and customary care are qualities that strict professional duties of sheriff require.  Al Cannon failed to occupy the requirements of his office thus he was acting outside of his duties . . . ."  (Pl.'s Objs., ECF No. 12, at 2.)  The Court construes that argument as a contention that Cannon was not acting in his official capacity when he allowed the Does to take Plaintiff to Arizona.

As a threshold matter, Plaintiff's objection is procedurally barred.  By failing to object to the first R & R, Plaintiff waived his right to review of any of the analysis therein.  *See, e.g.*, *Asbury v. Tartarsky*, 616 F. App'x 71, 72 (4th Cir. 2015) (per curiam) ("The timely filing of specific objections to a magistrate judge's recommendation is necessary to preserve appellate review of the substance of that recommendation . . . .").  Plaintiff's allegations against Cannon in his current lawsuit do not differ materially from the allegations in the first lawsuit, which this Court held were barred by the Eleventh Amendment.  In essence, then, Plaintiff is using his second lawsuit to make an objection long after the time for doing so expired.  *See* Fed. R. Civ. P.

72(b)(2) (requiring parties to file and serve objections to an R & R within fourteen days after receiving a copy of the R & R).   The waiver rule and the objection deadline are intended to promote the orderly evaluation of claims and finality in litigation.   Those important policies would be undermined if litigants could revive an issue by filing a successive lawsuit that raises an issue already ruled on and then objecting when the court makes that ruling again.

Procedural problems aside, Plaintiff's objection lacks merit.   As Plaintiff explains in his objection, he believes Cannon failed to fulfill his professional duties as a sheriff.   Even assuming Plaintiff has sufficiently alleged that failure in the complaint, such an allegation would not put Plaintiff's claims against Cannon beyond the reach of the Eleventh Amendment.   Although the Eleventh Amendment "does not bar an action against a state official that is based on a theory that the officer acted beyond the scope of his statutory authority," *Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 689 (1982), an official's mere failure to fulfill his duties does not mean he acted outside his official capacity, *see, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120 (1984) ("[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment."); *Dillon ex rel. Dillon v. Dir., Dep't of Corr.*, 552 F. Supp. 30, 33 (W.D. Va. 1982) (finding allegation that official performed his statutory duties negligently did not constitute a claim that official was acting outside his statutory authority).

Accordingly, the Court overrules Plaintiff's objection and adopts the magistrate's recommendation to dismiss all claims against Cannon.

## II.      Remaining Federal Claims

### A.      § 1983 Claims

Plaintiff contends Defendants are liable to him under § 1983 because they violated federal extradition laws while acting under color of state law.

In her R & R, the magistrate stated that the word "Georgia" in the extradition waiver form Plaintiff signed was simply a typographical error; the form should have used "Arizona." The magistrate also read Plaintiff's complaint as alleging that, when Plaintiff was originally taken into custody of the Sheriff's Office, Plaintiff knew he had outstanding warrants in Arizona. Based on those two premises, the magistrate appeared to conclude that, despite the form's typo, Plaintiff knew he was signing a form giving authorities permission to extradite him to Arizona. Accordingly, Defendants could not be liable under § 1983 because Plaintiff's federal extradition rights were not violated.  Plaintiff objects strenuously to that conclusion and to the premises on which it is based.

First, he argues there was no typo on the waiver—or at least none of which he was aware when he signed that form.  In his objections, he states that he knew he had an outstanding arrest warrant in Georgia, and so when he was given the form, he signed it believing he was waiving his rights to fight extradition to Georgia.  Plaintiff's argument is unavailing.  As the magistrate noted, Plaintiff never alleged in his complaint that he was considered to be a fugitive from Georgia or that he knew he was wanted in that state.  Plaintiff cannot use his objections to allege facts missing from his complaint, and he cannot validly object using factual assertions that he never presented to the magistrate.  *See, e.g.*, *Vanzant v. Carolina Ctr. for Occupational Health*, No. 8:14-cv-3725-RBH, 2015 WL 5039302, at *4 (D.S.C. Aug. 25, 2015) ("Plaintiff cannot use his objections to plead new facts not alleged in his complaint"); *Glob. Title, LLC v. St. Paul Fire*

*& Marine Ins. Co.*, 788 F. Supp. 2d 453, 459 (E.D. Va. 2011) ("Plaintiffs can hardly be heard to complain about the magistrate's failure to address a theory that was never properly presented for her consideration.").

Second, Plaintiff contends that he did not know he had any outstanding warrants in Arizona when he signed the waiver form.  He claims he first became aware of the Arizona warrants after he signed the form, when he went to his holding cell and read the fugitive arrest warrant for the first time.  This argument fails for the same reason as the prior one.  Plaintiff did not allege these facts in the complaint, and therefore it is inappropriate for him to rely on them now.  *See Vanzant*, 2015 WL 5039302, at *4; *Glob. Title, LLC*, 788 F. Supp. 2d at 459.

Nevertheless, the Court declines to adopt the magistrate's analysis.  It turns on the premise that, by signing the extradition waiver form, Plaintiff knew he was consenting to be extradited to Arizona despite the fact that the form listed another state.  That premise is an inference drawn from the allegations; Plaintiff does not explicitly allege any such facts.  Although one could reasonably draw that inference from the complaint, it is not the only reasonable inference the complaint supports.  For example, Plaintiff alleges that he "would have fought extradition to Arizona."  (Compl., ECF No. 1, at 11.)  Given that the waiver form mentions Georgia, rather than Arizona, Plaintiff's allegation supports a reasonable inference that Plaintiff never intended to sign away his right to fight extradition to Arizona.  Under Rule 12(b)(6) and the liberality required in reviewing *pro se* filings, the magistrate was required to use this more favorable inference.

In addition, the magistrate appears to have relied heavily on the allegation in the complaint that "Plaintiff was taken into custody of the Charleston County Sheriff's Office . . . to await the disposition of a fugitive warrant which had been issued out of the state of Arizona."

(Compl., ECF No. 1, at 11.)   Based on that allegation and the fact that the arrest warrant mentions Arizona, the magistrate inferred that Plaintiff knew when he signed the waiver that he was wanted in Arizona.  This inference, too, is reasonable; at best, Plaintiff knew or should have known from the arrest warrant that he was a wanted man in Arizona.  However, the magistrate then used that inference to infer that Plaintiff knowingly waived his Arizona extradition rights by signing a form that mentions another state.  That reading does not account for Plaintiff's explicit allegation that he would have fought extradition to Arizona.  A more favorable reading, which takes that allegation into account, is that Plaintiff knew he was wanted in Arizona but had no intention of returning there willingly.   Under that reading, the fact that Plaintiff signed an extradition waiver form that mentions only another state does not show any intent by Plaintiff to surrender to Arizona authorities.   Rather, it suggests precisely what Plaintiff contends: the defendants improperly used an extradition waiver for one state to take him to another.

Finally, the magistrate appeared to believe that the only plausible reason "Georgia" appeared on the waiver form was that it was a typo, and that Plaintiff was aware of the document's true intent when he signed it.   Once more, these inferences are not unreasonable; after all, the affidavit deputy Kellett prepared in order to arrest Plaintiff features the obvious typo of "Maricopa County, North Carolina," a place that does not exist.  However, when one views the complaint's allegation in the light most favoring Plaintiff, another reasonable explanation is that the form truly was meant to be a Georgia-specific waiver, or, at very least, that the typo caused Plaintiff to sign the form under a justifiably mistaken belief about its effect.

The above discussion illustrates that when the complaint is construed liberally, it may be reasonably construed in ways that are more favorable to Plaintiff than the interpretation that the

magistrate used.  Because the R & R's analysis is not the product of viewing the complaint in the light most favoring Plaintiff, the Court sustains Plaintiff's objections.

The magistrate's recommendation to dismiss the § 1983 claims against John Doe I and John Doe II was based solely on that unfavorable reading of the complaint.  Accordingly, the Court will return the case to the magistrate for further analysis of whether the complaint states a plausible § 1983 claim against John Doe I or John Doe II.  By returning the case, this Court does not intend to imply what conclusion the magistrate should reach.  Indeed, the Court expresses no opinion on whether, under the inferences identified above, Plaintiff has stated a plausible § 1983 claim against any defendant.  Further, recognizing that the magistrate may not have addressed all possible grounds for dismissal in her R & R, the Court does not intend to limit the magistrate's analysis to any particular issues involved in Plaintiff's § 1983 claims.

However, as for the County, the Court agrees with the magistrate that dismissal is appropriate.  In her R & R, the magistrate held that even if Plaintiff's extradition rights were violated, Plaintiff's § 1983 claims against the County fail because Plaintiff has not sufficiently alleged that a County custom or policy caused the violation.  Plaintiff's theory is that Cannon was the County's policymaker on extradition issues and that, by allowing John Doe I and John Doe II to take Plaintiff to Arizona, Cannon set a policy or custom of allowing illegal extraditions to take place.  However, as the magistrate correctly pointed out, even if Plaintiff's extradition was illegal, Plaintiff has not alleged any facts showing that this was anything more than a single, isolated incident.  *See, e.g.*, *Evans v. R. Eugene Johnson Det. Ctr.*, No. 9:05-cv-2426-HFF-GCK, 2007 WL 914265, at *6 (D.S.C. Mar. 22, 2007) ("[I]solated, unprecedented incidents are insufficient to create liability for a municipality or county under 42 U.S.C. § 1983." (citing *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000))).  Indeed, Plaintiff's allegation that he is "a class

of one," (Compl., ECF No. 1, at 5), indicates the County's alleged conduct was unique to Plaintiff.  Additionally, Plaintiff's § 1983 claims against the County fail because Plaintiff has not alleged that any County employees or agents were involved in his extradition.  *See Allen v. Fid. & Deposit Co. of Md.*, 515 F. Supp. 1185, 1190 (D.S.C. 1981) (dismissing § 1983 claim against county based on sheriff's deputy's conduct; plaintiff alleged no facts showing direct involvement by county employees or agents, and under § 1983, "personal involvement must be shown"), *aff'd*, 694 F.2d 716 (4th Cir. 1982) (table).

Accordingly, the § 1983 claims against the County are dismissed, and the § 1983 claims against John Doe I and John Doe II will be returned to the magistrate for further consideration.

**B.      § 1985 Claims**

Plaintiff alleges that Defendants, in violation of § 1985, conspired to deprive him of his rights under federal extradition laws.  Plaintiff's theory is that when John Doe I and John Doe II arrived at the jail to pick up Plaintiff, they knew that the extradition waiver was invalid and that they lacked the authority to take custody of him.  Accordingly, at the jail, they "did agree between themselves to fraudulently misrepresent to jail authorities there that the documentation they were presenting was consummate by virtue of it's [sic] having been duly issued, and therefore conferred upon them legal authority to" take custody of Plaintiff.  (Compl., ECF No. 1, at 12.)   Plaintiff further alleges John Doe I and John Doe II took custody of him by carrying out their conspiracy.

The Fourth Circuit has "rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts."  *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995).  Noting that standard, the magistrate stated in her R & R that Plaintiff's claims fail because his allegations of conspiracy are "a conclusory statement

unsupported by concrete facts." (R & R, ECF No. 10, at 8.) Plaintiff has not specifically objected to that analysis, but the Court still disagrees, in part. As to the County, Plaintiff's allegations are conclusory. Plaintiff does not allege any County involvement whatsoever in this purported conspiracy. As to John Doe I and John Doe II, however, Plaintiff clearly has alleged specific, concrete facts of a conspiracy between those two defendants. *Cf. A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (affirming dismissal of § 1985 where plaintiff failed "to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made"; at most, the allegations amounted to "parallel conduct and a bare assertion of a conspiracy").

Nevertheless, the Court finds dismissal appropriate as to John Doe I and John Doe II. One of the elements of a § 1985 claim is that the conspirators "are motivated by a specific class-based, invidiously discriminatory animus." *A Soc'y Without a Name*, 655 F.3d at 346. "Historically, § 1985 was intended to encompass only those conspiracies motivated by animus against the kind of classes Congress was trying to protect when it enacted the Civil Rights Act." *Stanfield v. Wigger*, No. 2:14-cv-839-PMD, 2015 WL 58077, at *4 n.4 (D.S.C. Jan. 5, 2015) (finding plaintiff failed to allege defendants "were in any way motivated by discrimination against [him] based on his race, color, or national origin") (citation omitted). As in *Stanfield*, Plaintiff's complaint contains no allegation of class-based motivation. Therefore, it fails to state a claim for relief under § 1985.

Accordingly, the Court dismisses Plaintiff's § 1985 claims.

C.     **Declaratory Judgment Claims**

Citing 28 U.S.C § 2201, Plaintiff asks this Court to issue a declaratory judgment stating that Defendants violated federal law by conspiring to kidnap him and by then carrying out the kidnapping.   In her R & R, the magistrate recommends dismissing this claim because it improperly seeks only a declaration about the legality of past events.   Plaintiff has not made any specific objection to the magistrate's analysis on this point, but in any event, the Court has independently reviewed Plaintiff's declaratory judgment claim.   It agrees with the magistrate. *See Johnson v. McCuskey*, 72 F. App'x 475, 477 (7th Cir. 2003) ("Declaratory judgments . . . are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct."); *Abebe v. Richland Cty.*, No. 2:09-cv-2469-MBS-RSC, 2009 WL 6582396, at \*4 (D.S.C. Oct. 8, 2009) (finding request under § 2201 for declaration that defendants had violated plaintiff's constitutional rights "misse[d] the mark" by focusing only on past events), *report and recommendation adopted*, 2010 WL 2431062 (D.S.C. June 14, 2010), *aff'd*, 399 F. App'x 820 (4th Cir. 2010) (per curiam).   The Court adopts the magistrate's analysis on this point and dismisses Plaintiff's declaratory judgment cause of action.

III.     **Remaining State-Law Claims**

Finally, in her R & R, the magistrate suggests that if this Court dismisses all of Plaintiffs' federal claims, it should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.   *See* 28 U.S.C. § 1367(c)(3).   Although Plaintiff has not objected to that recommendation, dismissal of state-law claims under § 1367(c)(3) is appropriate only when all federal claims have been dismissed.   As it remains to be seen whether Plaintiff has stated any facially plausible § 1983 claims against John Doe I or John Doe II, dismissing Plaintiff's state-law claims would not be appropriate at this time.   The Court asks that, if the magistrate

determines that any of Plaintiff's § 1983 claims should not be dismissed, the magistrate consider

whether Plaintiff has adequately pled his state-law claims.

## CONCLUSION

Therefore, for the reasons given above, it is **ORDERED** that Plaintiff's objections are

**OVERRULED IN PART AND SUSTAINED IN PART**.  All claims against Defendant Al

Cannon, Jr., all federal claims against Defendant Charleston County, and Plaintiff's § 1985

claims against John Doe I and John Doe II are hereby **DISMISSED**.  This matter shall be

**RECOMMITTED** to the magistrate for additional consideration of whether Plaintiff has stated

a § 1983 claim against John Doe I or John Doe II and, if appropriate, whether he has stated any

valid state-law claims against John Doe I, John Doe II, or the County.

**AND IT IS SO ORDERED.**

PATRICK MICHAEL DUFFY
United States District Judge

December 15, 2015
Charleston, South Carolina