IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Ellis Jerome Swinton, Sr., *a/k/a* Ellis J. Swinton, Sr., | ) ) ) | Civil Action No.: 8:15-cv-04148-PMD-JDA |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | **REPORT AND RECOMMENDATION** |
| Charleston County, Ross Foley, Frederick Overton, | ) ) ) | **OF MAGISTRATE JUDGE** |
| Defendants.[1] | ) ) | |
| _____ | ) | |

This matter is before the Court on a motion to dismiss or, in the alternative, to transfer venue, filed by Defendants Ross Foley ("Foley") and Frederick Overton ("Overton") (collectively "the Unit Defendants") [Doc. 69] and a motion to dismiss filed by Defendant Charleston County ("Charleston County") [Doc. 75].  Plaintiff is proceeding pro se and brought this civil rights action pursuant to 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

---

[1]Defendant J. Al Cannon, Jr. ("Cannon") was terminated from this action on December 15, 2015. [Doc. 14.] Plaintiff substituted Defendants Ross Foley and Frederick Overton for John Does I and II.  [Docs. 43, 45.]

Plaintiff filed this case on September 30, 2015,[2] alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[3] [Doc. 1.] Plaintiff filed an Amended Complaint on December 29, 2015. [Docs. 1-4; 22.]

The Unit Defendants filed a motion to dismiss or, in the alternative, to transfer venue on July 14, 2016. [Doc. 69.] Plaintiff filed a response to the motion on August 15, 2016 [Doc. 76], and a reply was filed on August 25, 2016 [Doc. 80]. Charleston County filed the instant second motion to dismiss on August 16, 2016. [Doc. 75.] The following day, the Court issued a *Roseboro* Order, in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 78.] Plaintiff failed to respond to Charleston County's motion. As Plaintiff is proceeding pro se, the Court filed an Order on September 27, 2016, giving Plaintiff through October 17, 2016, to respond to Charleston County's motion to dismiss.[4] [Doc. 83.] Despite the Court's warnings, Plaintiff has failed to respond to Charleston County's second motion to dismiss. Accordingly, the motions are ripe for review.

---

[2]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on September 30, 2015. [Doc. 1 at 10 (Complaint signed September 30, 2015).]

[3]The Court previously dismissed Plaintiff's § 1983 claims against Charleston County as well as Plaintiff's § 1985 claims and declaratory judgment claim against all Defendants. [Doc. 14.]

[4] The Court's Order was returned as undeliverable. [Doc. 85.] It appears Plaintiff is no longer in custody. Plaintiff has not provided the Court with an updated address.

2

## BACKGROUND[5]

This case involves Plaintiff's allegedly unlawful extradition from South Carolina to Arizona.  On November 14, 2013, Plaintiff was taken into the custody of the Charleston County Sheriff's Office.  [Doc. 1-1 at 1.]  The following day, a magistrate issued a warrant authorizing the Sheriff's Office to arrest Plaintiff for being a fugitive from justice.  [*Id.*] Attached to the warrant was an affidavit from deputy Brian Kellett, in which he averred that Plaintiff had "unlawfully enter[ed] the State of South Carolina, while having outstanding warrants from the State of Arizona."  [*Id.* at 4.]  Kellett further alleged the Sheriff's Office had received a fax "from the Maricopa County North Carolina Sheriff's Office" stating that Plaintiff "had outstanding warrants of arrest . . .  in the State of Arizona."  [*Id.*]

Later on November 15, 2013, Kellett gave Plaintiff an extradition waiver form and asked Plaintiff to sign it.[6]  [*Id.* at 1.]  The waiver form stated Plaintiff was waving his rights under any laws "that require any formal extradition for [his] transfer from the State of South Carolina to the State of Georgia to answer the charges preferred against [him] in that state."  [*Id.* at 4.]  The form further provided that Plaintiff was absolving the Sheriff's Office and Sheriff Al Cannon "from any and all liability for delivering [Plaintiff] to the proper authorities of the State of Georgia."  [*Id.*]  Plaintiff signed the form.

---

[5]The facts included in this background section are taken directly from Plaintiff's Complaint and Amended Complaint  [Docs. 1; 1-4] and were previously cited by this Court [Doc. 14].

[6]The Complaint does not indicate whether, at that time, Kellett also provided Plaintiff a copy of the arrest warrant and Kellett's affidavit.

Plaintiff was never presented with any form waiving his extradition rights for Arizona. [*Id.* at 1.] Plaintiff states that he never would have signed such a form and, instead, would have resisted attempts to extradite him to Arizona. [*Id.*]

On December 1, 2013, Foley and Overton came to the jail for the purpose of transporting Plaintiff to Arizona.  At some point, the agents realized that the extradition waiver form Plaintiff signed was not valid for extradition to Arizona.  [*Id.* at 2.]  When they arrived at the jail, they agreed they would present the faulty extradition form to jail personnel and fraudulently represent that the form gave them legal authority to take Plaintiff to Arizona.  [*Id.*]  Over Plaintiff's objections, Cannon allowed the two agents to take custody of Plaintiff.  [*Id.*]  Plaintiff was then flown to Arizona.

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978).  Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  *See Small v. Endicott*, 998

4

F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ."

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

5

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed."

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff

complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support his claim and entitle him to relief.  When considering a motion to dismiss, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).  Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as exhibits or incorporated by reference.  *See Simons v. Montgomery Cty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985).

With respect to well-pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic

7

recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Iqbal*, 556 U.S. at 678 (Where a complaint pleads facts that are merely consistent with a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is

entitled to relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**Motion to Transfer Venue Standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.  A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors."  *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (internal quotation marks and citation omitted).  When considering whether to exercise its discretion to transfer a case, a court considers the following factors: (1) the weight accorded to the plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice.[7]  *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015).

---

[7]Courts in this district have previously considered seven or eleven factors when deciding motions to transfer venue.  *See, e.g.*, *N. Am. Rescue Prods. Inc. v. Bound Tree Med.*, No. 6:07-2936-HFF, 2008 WL 304881, at * 1 (D.S.C. Jan. 31, 2008) (citing *Jim Crockett Promotions, Inc. v. Action Media Group, Inc.*, 751 F.Supp. 93, 96 (W.D.N.C. 1990)); *United States v. $78,850.00 in U.S. Currency*, 446 F.Supp.2d 428, 431 n.2 (D.S.C. 2006) (quoting *Lawson v. Dawson Constr. Plant, Ltd.*, 201 F.3d 436 (4th Cir. 1999) (unpublished table decision)).

**DISCUSSION**

**Charleston County**

On October 8, 2015, the Court advised Plaintiff of his duty to keep the Court informed of his current address.  [Doc. 8.]   As stated above, on August 16, 2016, Charleston County filed its second motion to dismiss.  [Doc. 75.]  A *Roseboro* Order was entered on August 17, 2016, advising Plaintiff of the summary judgment/dismissal procedure and the possible consequences if he failed to  respond adequately.  [Doc. 78.] Despite this explanation, Plaintiff failed to respond to the motion.

As Plaintiff is proceeding pro se, the Court filed an Order on September 27, 2016, giving Plaintiff through October 17, 2016, to respond to the motion to dismiss.[8]  [Doc. 83.] Plaintiff has not responded to Charleston County's second motion to dismiss.

Based on the foregoing, it appears Plaintiff no longer wishes to pursue claims against Charleston County.  "The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them, and this authority includes the power to order dismissal of an action for failure to comply with court orders."  *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (citing Fed. R. Civ. P. 41(b)).  "Federal courts possess an inherent authority to dismiss cases with prejudice sua sponte."  *Gantt v. Md. Div. of Corr.*, 894 F. Supp. 226, 229 (D. Md. 1995) (citing *Link v. Wabash R. Co.*, 370 U.S.

---

[8] On October 11, 2016, the Court's September 27, 2016, Order was returned as undeliverable because Plaintiff was no longer in custody.  [Doc. 85.]

626 (1962); *White v. Raymark Indust., Inc.*, 783 F.2d 1175 (4th Cir. 1986); *Zaczek v. Fauquier Cty., Va.*, 764 F. Supp. 1071, 1074 (E.D. Va.1991)).

The Fourth Circuit, in *Davis v. Williams*, recognizing that dismissal with prejudice is a harsh sanction that should not be invoked lightly, set forth four factors for determining whether Rule 41(b) dismissal is appropriate:

(1) the degree of personal responsibility on the part of the plaintiff;

(2) the amount of prejudice to the defendant caused by the delay;

(3) the presence or absence of a drawn out history of deliberately proceeding in a dilatory fashion; and

(4) the effectiveness of sanctions less drastic than dismissal.

588 F.2d 69, 70 (4th Cir. 1978) (citing *McCargo v. Hedrick*, 545 F.2d 393, 396 (4th Cir. 1976)).  Subsequently, however, the Fourth Circuit noted that "the four factors . . .  are not a rigid four-pronged test," and whether to dismiss depends on the particular circumstances of the case.  *Ballard*, 882 F.2d at 95.  For example, in *Ballard*, the court reasoned that "the Magistrate's explicit warning that a recommendation of dismissal would result from failure to obey his order is a critical fact that distinguishes this case from those cited by appellant. . . .  In view of the warning, the district court had little alternative to dismissal.  Any other course would have placed the credibility of the court in doubt and invited abuse."  *Id.* at 95–96.

As Plaintiff is proceeding pro se, he is personally responsible for his failure to file a response to the motion to dismiss and to advise the Court of the current address at which

11

he can receive mail.  The Court specifically warned Plaintiff that the case would be subject to dismissal if he failed to update his address and thereby failed to meet a Court deadline. [Doc. 8 at 2.]  Additionally, Plaintiff has had over three months to respond to the motion to dismiss.  Plaintiff's initial response was due by September 22, 2016, and despite being advised of the possible consequences if he failed to adequately respond, Plaintiff has elected not to respond.  Because Plaintiff has already ignored Court Orders and deadlines, sanctions less drastic than dismissal would not be effective.   Accordingly, the Court recommends that Plaintiff's claims against Charleston County be dismissed  pursuant to Federal Rule of Civil Procedure 41(b).

**Unit Defendants**

The Unit Defendants argue a transfer is appropriate because (a) venue is proper in the District of Arizona, (b) transfer serves the convenience of the parties and witnesses, and (c) is in the interest of justice.  [Doc. 69 at 3–5.]  The Court agrees.

In general, a plaintiff's choice of venue is entitled to substantial weight.  *Trs. of the Plumbers & Pipefitters Nat'l Pension Fund*, 791 F.3d at 444.  Here, Plaintiff has filed several cases challenging his extradition to Arizona.[9]  First, in April 2014, Plaintiff filed an action in the District of Arizona, *Swinton v. Arpaio*, No. 2:14-cv-00777-JTT-MEA, which was dismissed with prejudice for failure to state a claim.  On May 1, 2015, Plaintiff again filed

_____

[9]t is appropriate for the  Court to take judicial notice of Plaintiff's cases.  *See Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

12

suit in the District of Arizona, *Swinton v. Arpaio,* No. 2:15-cv-00794-JTT-MEA, which remains pending.  On May 11, 2015, Plaintiff filed suit in this Court, *Swinton v. Cannon*, No. 8:15-cv-1931-PMD-JDA, which was dismissed without prejudice.  As stated above, Plaintiff filed the instant action on September 30, 2015.  [Doc. 1.]  Plaintiff's Amended Complaint in *Swinton v. Arpaio,* No. 2:15-cv-00794-JTT-MEA, which named John Does I and II, is almost identical to the instant action.  [Doc. 69-1.]  Thus, Plaintiff has chosen both Arizona and South Carolina as venues to challenge his extradition, and Plaintiff's choice of venue neither weighs in favor of or against transfer.

Because the undersigned has recommended that the claims against Charleston County be dismissed, all remaining parties to this action are located in Arizona.  Foley and Overton are assigned to the Extraditions Unit of the Maricopa County Sheriff's Office located in Phoenix, Arizona.  [Docs. 62, 63.]  Plaintiff's last known address is the Arizona State Prison Complex in Tucson, Arizona.  Thus, with respect to convenience of the parties, because no party is present in South Carolina, it would be more convenient if the case is transferred to the District of Arizona.  Further, any judgment obtained against the Unit Defendants would be enforced in Arizona.  In light of these factors, and in the interest of justice, the Court finds transfer is appropriate to the District of Arizona pursuant to § 1404(a).

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Plaintiff's claims against Charleston County be DISMISSED for failure to prosecute, and the Unit

Defendants' motion to transfer venue [Doc. 69] be GRANTED, and this action be transferred to the District of Arizona.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

November 21, 2016
Greenville, South Carolina